**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.          -Civ-**
**Judge:**
**Magistrate Judge:**

| | |
|---|---|
| HALAL KHALID, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | CLASS ACTION |
| Plaintiff, | **<u>JURY TRIAL DEMANDED</u>** |
| vs. | |
| ALERE INC., NAMAL NAWANA, JAMES F. HINRICHS, JONATHAN WYGANT, RON ZWANZIGER, AND DAVID TEITEL, | |
| Defendants. | |

Plaintiff Halal Khalid ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by The Alere Inc. ("Alere" or the "Company"), press releases, as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

<u>NATURE OF THE ACTION</u>

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased Alere securities from February 29, 2012 through

November 4, 2016, both dates inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business within this District, maintains offices in this District, and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Alere securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Alere is a Delaware corporation headquartered in Waltham, Massachusetts. The Company provides professional diagnostic products and services for

infectious and cardiometabolic disease, and toxicology in the United States, Europe, and internationally. The Company's infectious disease products and services are used to detect various diseases, such as viral hepatitis; respiratory syncytial virus; influenza; streptococcus; pneumonia; tuberculosis; human immunodeficiency virus/acquired immunodeficiency syndrome; and gastrointestinal and vector-borne diseases, as well as syphilis and other sexually-transmitted diseases.. Alere's securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "ALR."

8.      Defendant Namal Nawana ("Nawana") has served as the Company's Chief Executive Officer  ("CEO") and President since October 2014.

9.      Defendant James F. Hinrichs ("Hinrichs") has served as the Company's Chief Financial Officer ("CFO") since April 2015.

10.     Defendant Jonathan Wygant ("Wygant") has served as the Company's Chief Accounting Officer from April 2016 throughout the end of the Class Period.

11.     Defendant Ron Zwanziger ("Zwanziger") served as the Company's CEO from the beginning of the Class Period until July 1, 2014.

12.     Defendant David Teitel ("Teitel") served as the Company's CFO from the beginning of the Class Period until April 2015.

13.     Defendants Nawana, Hinrichs, Wygant, Zwanziger and Teitel are sometimes referred to herein as the "Individual Defendants."

14.     Defendant Alere and the Individual Defendants are referred to herein, collectively, as the "Defendants."

15.     Each of the Individual Defendants:

        a.      directly participated in the management of the Company;

3

      b.     was directly involved in the day-to-day operations of the Company at the highest levels;

      c.     was privy to confidential proprietary information concerning the Company and its business and operations;

      d.     was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

      e.     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

      f.     approved or ratified these statements in violation of the federal securities laws.

16.     As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and was traded on NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

17.     Alere is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

18.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Alere under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Alere's wholly-owned subsidiary, Arriva Medical LLC ("Arriva"), is headquartered in Coral Springs, Florida and has been a subsidiary of Alere prior to and throughout the Class Period. Through Arriva, the Company is a national mail-order supplier of diabetic testing supplies including blood glucose monitors, test strips, lancets, lancing devices, and control solutions, as well as other related medical supplies in the U.S. In many instances, Arriva's products were covered by Medicare, Medicaid, and other third-party payers.

### Materially False and Misleading Statements

20.     On February 29, 2012, the Company filed a Form 10-K for the year ending December 31, 2011 (the "2011 10-K") with the SEC which included the Company's financial statements for the period ending December 31, 2011. The 2011 10-K was signed by Defendants Zwanziger and Teitel. Attached to the 2011 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Zwanziger and Teitel attesting to the accuracy of the financial statements, the effectiveness of internal controls, and that all fraud was disclosed.

21.     The 2011 10-K discussed Medicare reimbursements with respect to Arriva's products, stating in relevant part:

> With our acquisition of Arriva, we are now a major, national mail order supplier of diabetic testing supplies, including blood glucose monitors, test strips, lancets, lancing devices, and control solution, as well as other related medical supplies in the United States. *These products are usually covered by Medicare, Medicaid and other third-party payers.*
>
> *            *            *
>
> Patient Self-Testing Services. We also offer services designed to support anticoagulation management for patients at risk for stroke and other clotting

disorders who can benefit from home INR monitoring. Our Alere Home Monitoring business assists patients in acquiring home INR monitors, including our Alere INRatio2 monitors, and seeking Medicare reimbursement and insurance coverage, while providing physicians with a comprehensive solution for incorporating home INR monitoring into their practice. Our CoagNow program includes our Face-2-Face patient training model, which utilizes experienced nurse educators, patient scheduling, collection and reporting of home testing results to the physician and CoagClinic, our sophisticated web-based application that provides healthcare professionals with real-time access to patient information.

*      *      *

**Methods of Distribution and Customers**

In the United States, Canada, the United Kingdom, Ireland, Germany, Italy, Spain, Portugal, Switzerland, the Netherlands, Belgium, France, Austria, Sweden, Norway, Denmark, Finland, Israel, India, Japan, China, South Korea, Taiwan, Australia, New Zealand, South Africa, Brazil, Argentina and Colombia, we distribute our professional diagnostic products to hospitals, reference laboratories, physician offices and other point-of-care settings through our own sales forces and distribution networks. In these countries, as well as in all other major world markets, we also utilize third-party distributors to sell our products. Our Alere Home Monitoring business facilitates the distribution of our Alere INRatio PT/INR coagulation monitors by contacting targeted customers and facilitating the Medicare reimbursement process for physicians and for patients monitoring at home.

(Emphasis added).

22.     On March 1, 2013, the Company filed a Form 10-K for the year ending December 31, 2012 (the "2012 10-K") with the SEC which included the Company's financial statements for the period ending December 31, 2012. The 2012 10-K was signed by Defendants Zwanziger and Teitel. Attached to the 2012 10-K were SOX certifications signed by Defendants Zwanziger and Teitel attesting to the accuracy of the financial statements, the effectiveness of internal controls and that all fraud was disclosed.

23.     The 2012 10-K discussed Medicare reimbursements with respect to Arriva's products, stating in relevant part:

Through our subsidiary Arriva, we are a major, national mail order supplier of diabetic testing supplies, including blood glucose monitors, test strips, lancets,

lancing devices, and control solution, as well as other related medical supplies in the U.S. ***These products are usually covered by Medicare, Medicaid and other third-party payers.***

\*      \*      \*

**Methods of Distribution and Customers**

We distribute our professional diagnostic products to hospitals, reference laboratories, physician offices and other point-of-care settings through an extensive worldwide distribution network. We have our own sales force in many countries, including most major markets. We also utilize third-party distributors to sell our products. Our Alere Home Monitoring business facilitates the distribution of our Alere INRatio PT/INR coagulation monitors in the United States by contacting patients who have expressed an interest or have prescriptions from their physicians and facilitating the Medicare reimbursement process for physicians and for patients monitoring at home. Our diabetes testing supplies business provides these products via mail-order to patients in the United States.

\*      \*      \*

***Our Arriva business has been selected through the bidding process and offered a contract to have its products reimbursed by Medicare.***

(Emphasis added).

24.     On March 3, 2014, the Company filed a Form 10-K for the year ending December 31, 2013 (the "2013 10-K") with the SEC. The 2013 10-K was signed by Defendants Zwanziger and Teitel. Attached to the 2013 10-K were SOX certifications signed by Defendants Zwanziger and Teitel attesting to the accuracy of the financial statements, effectiveness of internal controls and that all fraud was disclosed.

25.     The 2013 10-K discussed Medicare reimbursements with respect to Arriva's products, stating in relevant part:

Through our subsidiary Arriva Medical, we are a major, national mail order supplier of diabetic testing supplies, including blood glucose monitors, test strips, lancets, lancing devices, and control solutions, as well as other related medical supplies in the U.S. ***These products are usually covered by Medicare, Medicaid and other third-party payers.***

\*      \*      \*

7

**Methods of Distribution and Customers**

We distribute our professional diagnostic products to hospitals, reference laboratories, physician offices and other point-of-care settings through an extensive worldwide distribution network. We have our own sales force in many countries, including most major markets. We also utilize third-party distributors to sell our products. Our Alere Home Monitoring business facilitates the distribution of our Alere INRatio PT/INR coagulation monitors in the United States by contacting patients who have expressed an interest or have prescriptions from their physicians and facilitating the Medicare reimbursement process for physicians and for patients monitoring at home. Our diabetes testing supplies business provides these products via mail-order to patients in the United States.

\* \* \*

In the field of diabetes, the competitors for the Afinion Test System and NycoCard Test System include Siemens Healthcare, Bio-Rad Laboratories, Roche Diagnostics, EKF and Samsung. Arriva Medical, which is our mail order diabetes testing product supply business, primarily sells products which are covered by Medicare, Medicaid and other third-party payers. Our major competitors for the sale of these products are large retail pharmacies, such as Walmart, Walgreens and CVS, independent pharmacies and a small number of mail order suppliers. Competition for reimbursed diabetes testing supplies, which represent the majority of our business, changed significantly in 2013 as a result of CMS' decision, based on a competitive bidding process, to reimburse only 18 selected suppliers willing to accept a fixed lowered reimbursement rate. As a result of the competitive bidding process, Arriva Medical was awarded a national mail-order contract.

\* \* \*

***Our Arriva business was selected through the bidding process as one of 18 recipients of a contract to have its products reimbursed by Medicare.***

(Emphasis added).

26. On March 5, 2015, the Company filed a Form 10-K for the year ending December 31, 2014 (the "2014 10-K") with the SEC which included the Company's financial statements for the period ending December 31, 2014. The 2014 10-K was signed by Defendants Nawana and Teitel. Attached to the 2014 10-K were SOX certifications signed by Defendants Nawana and Teitel attesting to the accuracy of the financial statements, effectiveness of internal controls and that all fraud was disclosed.

27.     The 2014 10-K discussed Medicare reimbursements with respect to Arriva's products, stating in relevant part:

> Through our subsidiary Arriva Medical, we are a major, national mail order supplier of diabetic testing supplies, including blood glucose monitors, test strips, lancets, lancing devices, and control solutions, as well as other related medical supplies in the U.S. ***These products are usually covered by Medicare, Medicaid and other third-party payers.***
>
> \*        \*        \*
>
> **Methods of Distribution and Customers**
>
> We distribute our professional diagnostic products to hospitals, reference laboratories, physician offices and other point-of-care settings through an extensive worldwide distribution network. We have our own sales force in many countries, including most major markets. We also utilize third-party distributors to sell our products. Our diabetes testing supplies business provides its products via mail-order to patients in the United States. Our Alere Home Monitoring business facilitates the distribution of our Alere INRatio PT/INR coagulation monitors in the United States by contacting patients who have expressed an interest or have prescriptions from their physicians and facilitating the Medicare reimbursement process for physicians and for patients monitoring at home.
>
> \*        \*        \*
>
> In the field of diabetes, the competitors for the Afinion Test System and NycoCard Test System include Siemens Healthcare, Bio-Rad Laboratories, Roche Diagnostics, EKF and Samsung. Arriva Medical, which is our mail order diabetes testing product supply business, primarily sells products which are covered by Medicare, Medicaid and other third-party payers. Our major competitors for the sale of these products are large retail pharmacies, such as Walmart, Walgreens and CVS, independent pharmacies and a small number of mail order suppliers. ***Competition for reimbursed diabetes testing supplies, which represent the majority of our business, changed significantly in 2013 as a result of CMS' decision, based on a competitive bidding process, to reimburse only 18 selected suppliers willing to accept a fixed lowered reimbursement rate. As a result of the competitive bidding process, Arriva Medical was awarded a national mail-order contract.***

(Emphasis added).

28.     On August 8, 2016, the Company filed a Form 10-K for the year ending December 31, 2015 (the "2015 10-K") with the SEC which included the Company's financial statements for the period ending December 31, 2015. The 2015 10-K was signed by Defendants

Nawana, Hinrichs, and Wygant.  Attached to the 2015 10-K were SOX certifications signed by Defendants Nawana and Hinrichs attesting to the accuracy of the financial statements, effectiveness of internal controls and that all fraud was disclosed.

29.     The 2015 10-K discussed Medicare reimbursements, stating in relevant part:

Through our subsidiary Arriva Medical, we are a national mail-order supplier of diabetic testing supplies, including blood glucose monitors, test strips, lancets, lancing devices, and control solutions, as well as other related medical supplies in the U.S. ***These products are, in some cases, covered by Medicare, Medicaid and other third-party payers.***

*       *       *

**Methods of Distribution and Customers**

We distribute our professional diagnostic products to hospitals, reference laboratories, physician offices and other point-of-care settings through an extensive worldwide distribution network. We have our own sales force in many countries, including most major markets. We also utilize third-party distributors to sell our products. Our diabetes testing supplies business provides its products via mail- order to patients in the U.S. Our Alere Home Monitoring business facilitated the distribution of our Alere INRatio and INRatio2 PT/INR coagulation monitors (prior to our voluntary withdrawal of these monitors from the market) and other PT/INR coagulation monitors in the U.S. by contacting patients who have expressed an interest or have prescriptions from their physicians and facilitating the Medicare reimbursement process for physicians and for patients monitoring at home. As described further below under "—Government Regulation," we plan to voluntarily withdraw the INRatio and INRatio2 Systems from the market, but we expect Alere Home Monitoring to continue to distribute other PT/INR coagulation monitors.

*       *       *

In the field of diabetes, the competitors for the Afinion™ Test System and NycoCard Test System include Siemens Healthcare, Bio-Rad Laboratories, Roche Diagnostics, EKF and Samsung. Arriva Medical, which is our mail-order diabetes testing product supply business, primarily sells products which are covered by Medicare, Medicaid and other third-party payers. Our major competitors for the sale of these products are large retail pharmacies, such as Walmart, Walgreens and CVS, independent pharmacies and a small number of mail-order suppliers. ***Competition for reimbursed diabetes testing supplies, which represent the majority of our business in this field, changed significantly in 2013 as a result***

> *of the decision by the Centers for Medicare & Medicaid Services, or CMS, to utilize a competitive bidding process. Based on the most recent bidding process, CMS will reimburse only nine selected suppliers willing to accept a fixed lowered reimbursement rate for the period from July 2016 to December 2018. As a result of the most recent competitive bidding process, Arriva Medical was awarded a national mail-order contract.*

(Emphasis added).

30.     The above statements contained in ¶¶ 20-29 were false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading and/or failed to disclose that: (1) the Company's wholly-owned subsidiary, Arriva, was submitting claims to Medicare for deceased patients; (2) the foregoing conduct subjected Arriva to revocation of its Medicare enrollment; and (3) as a result, Defendants' statements about Alere's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## The Truth Emerges

31.     On November 4, 2016, the Company filed its Form 10-Q with the SEC for the quarter ended September 30, 2016 (the "3Q16 10-Q"). The 3Q16 10-Q was signed by Defendant Wygant. The 3Q16 10-Q disclosed that Arriva received notice from CMS that its Medicare enrollment would be revoked effective November 4, 2016. The 3Q16 10-Q states in relevant part:

> *Arriva LLC Billing Number*
>
> *On October 12, 2016, our subsidiary, Arriva Medical, LLC, or Arriva, which is our durable medical equipment, or DME, supply business that specializes in the furnishing of diabetic testing supplies via mail order, received a notice, dated October 5, 2016, that its Medicare enrollment will be revoked by CMS, based on CMS' assertion that, over a five year period, Arriva had allegedly submitted claims for 211 deceased patients (even if the products were appropriately ordered in advance of the patient's death).* The CMS letter only identifies 47 of the 211 claims. Our initial appeal of this determination was denied by CMS on November 2, 2016 and, therefore, *Arriva's Medicare enrollment will be revoked effective November 4, 2016, pending the outcome of further appeals.*

We have conducted an initial investigation into the issue and do not believe that Arriva received or retained improper reimbursement for the DME items furnished. We are continuing to work through the appeals process, with the goal that Arriva's enrollment status will be reactivated retroactively to November 4, 2016. Unless and until the enrollment status is reactivated, Arriva will be ineligible for reimbursement for any products or services furnished on or after November 4, 2016. If the enrollment is reactivated retroactive to November 4, 2016, we would be able to bill and be reimbursed for all covered products or services furnished. The Company's results of operation for the nine months ended September 30, 2016 included approximately $88 million in revenue attributable to Arriva.

(Emphasis added).

32.     On this news, shares of Alere fell $6.13 per share or over 14.5% from its previous closing price to close at $36.10 per share on November 4, 2016, damaging investors.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

<u>**PLAINTIFF'S CLASS ACTION ALLEGATIONS**</u>

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Alere securities traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alere securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or

thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Alere or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Alere;

- whether the Individual Defendants caused Alere to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Alere securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Alere securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Alere securities between the time the Defendants failed to disclose or misrepresented

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including

Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Alere securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Alere securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Alere securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Alere's disclosure controls and procedures.

47.     By virtue of their positions at Alere, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers

and/or directors of Alere, the Individual Defendants had knowledge of the details of Alere's internal affairs.

49.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Alere. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Alere's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Alere securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Alere's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Alere securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50.     During the Class Period, Alere securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Alere securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff

and the Class, the true value of Alere securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Alere securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of Alere, and conducted and participated, directly and indirectly, in the conduct of Alere's business affairs. Because of their senior positions, they knew the adverse non-public information about Alere's operations, current financial position and future business prospects.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Alere's

business practices, and to correct promptly any public statements issued by Alere which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Alere disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Alere to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Alere within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Alere securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of Alere. By reason of their senior management positions and/or being directors of Alere, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Alere to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Alere and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Alere.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 14, 2016                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence Rosen
Laurence Rosen, Esq.
Fla. Bar No. 0182877
275 Madison Avenue, 34th Floor
New York, NY  10116
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

20

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Alere Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Alere Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | Halal |
| **Middle initial:** | A |
| **Last name:** | Khalid |
| **Address:** | |
| **City:** | Redacted |
| **State:** | |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** | |
| **Email:** | |

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 07/20/16 | 200 | 43.2390 |
| Common Stock | 07/20/16 | 400 | 44.1690 |
| Common Stock | 08/01/16 | 60 | 37.28 |
| Common Stock | 08/09/16 | 80 | 39.2450 |
| Common Stock | 08/10/16 | 8 | 39.0399 |
| Common Stock | 08/15/16 | 10 | 40.5499 |
| Common Stock | 08/15/16 | 50 | 40.0099 |
| Common Stock | 08/15/16 | 4 | 40.0199 |
| Common Stock | 08/26/16 | 45 | 39.9627 |
| Common Stock | 08/26/16 | 6 | 39.30 |
| Common Stock | 09/07/16 | 7 | 42.4199 |
| Common Stock | 09/19/16 | 80 | 43.21 |

**Certification for Halal Khalid (cont.)**

| | | |
|---|---|---|
| Common Stock09/19/16 | 350 | 43.2175 |
| Common Stock09/19/16 | 20 | 43.2099 |
| Common Stock10/11/16 | 25 | 42.9050 |
| Common Stock10/21/16 | 50 | 44.6390 |
| Common Stock10/24/16 | 65 | 45.0399 |

Sales:

| Type of Security | Sale Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock07/20/16 | 200 | 43.5506 | |
| Common Stock08/09/16 | 60 | 38.80 | |
| Common Stock08/15/16 | 50 | 40.1901 | |
| Common Stock08/24/16 | 50 | 40.60 | |
| Common Stock09/21/16 | 50 | 43.00 | |
| Common Stock09/21/16 | 50 | 42.9901 | |
| Common Stock11/09/16 | 224 | 35.3787 | |
| Common Stock11/09/16 | 776 | 35.4312 | |

7.  I have not served as a representative party on behalf of a class under the federal securities laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury under the laws of the United States that the information entered is accurate.          **YES**

By clicking on the button below, I intend to sign and execute this agreement and retain the Rosen Law Firm, P.A. to proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 11/14/2016